```
                    UNITED STATES DISTRICT COURT
                  FOR THE DISTRICT OF NEW HAMPSHIRE
```

Joshua Martineau

    v.                                                     Civil No. 16-cv-541-LM
                                                           Opinion No. 2017 DNH 127

George Antilus, et al.

## **O R D E R**

Plaintiff Joshua Martineau alleges that, while he was awaiting trial, three corrections officers assaulted him in his cell at the Hillsborough County Department of Corrections ("Jail"). Martineau brings suit against the officers and Hillsborough County, alleging various state and federal claims. Hillsborough County moves for judgment on the pleadings on all claims asserted against it. Martineau objects. On May 8, 2017, the court heard oral argument on Hillsborough County's motion. For the reasons that follow, Hillsborough County's motion is granted in part and denied in part.

## **STANDARD OF REVIEW**

"The standard of review of a motion for judgment on the pleadings under Federal Rule of Civil Procedure 12(c) is the same as that for a motion to dismiss under Rule 12(b)(6)." Frappier v. Countrywide Home Loans, Inc., 750 F.3d 91, 96 (1st Cir. 2014) (quoting Marrero-Gutierrez v. Molina, 491 F.3d 1, 5

(1st Cir. 2007)).  Under Rule 12(b)(6), the court must accept the factual allegations in the complaint as true, construe reasonable inferences in the plaintiff's favor, and "determine whether the factual allegations in the plaintiff's complaint set forth a plausible claim upon which relief may be granted." Foley v. Wells Fargo Bank, N.A., 772 F.3d 63, 71 (1st Cir. 2014) (citation omitted).  A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).  "Judgment on the pleadings is proper 'only if the uncontested and properly considered facts conclusively establish the movant's entitlement to a favorable judgment.'"  Zipperer v. Raytheon Co., 493 F.3d 50, 53 (1st Cir. 2007) (quoting Aponte-Torres v. Univ. of P.R., 445 F.3d 50, 54 (1st Cir. 2006)).

## BACKGROUND[1]

Defendant Hillsborough County owns and operates the Jail in Manchester, New Hampshire.  In November 2013, Martineau was a pretrial detainee at the Jail.  At that time, defendants Sergeant George Antilus, Corrections Officer Joshua Caisse, and Corrections Officer Spencer Vrouhas (collectively, "Officers")

---

[1] These facts are drawn from the allegations in Martineau's complaint.  See doc. no. 1-1.

2

worked at the Jail and, as such, were employed by Hillsborough County.

On November 3, 2013, the Officers approached Martineau's cell and claimed that he was yelling and banging. Martineau alleges that he was not yelling and banging and did not pose a threat to anyone when the Officers assaulted him. Antilus sprayed mace in Martineau's face several times; Caisse and Vrouhas then held Martineau down while Antilus pulled down Martineau's underwear and sprayed his genitals and rectum with mace. After that, Caisse and Vrouhas placed Martineau in arm and leg restraints and kicked, punched, and kneed him and slammed his head against the cement floor.

The Officers did not clean Martineau or get him medical treatment, but instead moved him to a "safety cell" to wait in restraints. Doc. no. 1-1 at ¶ 16. Later that night, a nurse examined Martineau and noted that he had a bloody nose, an abrasion on his nose, a cut above his eye, and a lump on the back of his head. The nurse placed Martineau on "neurological watch" from November 3 through November 4. See id. at ¶ 19.

After the medical examination, the Officers removed Martineau's mace-soaked clothes and conducted a nude contraband search. The Officers told Martineau that "they had to teach all of [the inmates] a lesson that they were not messing around with

[the inmates]," and Vrouhas asked Martineau how his "balls and ass were feeling." Id. at ¶ 22. Martineau remained in restraints until November 5 and was not allowed to shower or clean the mace off his body during that time. The Officers later taunted Martineau about the November 3 incident, and one of the Officers bragged to Martineau that he had received a promotion for "beating [his] ass." Id. at ¶ 30.

On October 6, 2016, Martineau filed a complaint in state court against the Officers and Hillsborough County. Defendants removed the case to this court and Hillsborough County now moves for judgment on the pleadings on the three claims asserted against it. See doc. no. 9.

## DISCUSSION

Martineau alleges that Hillsborough County is liable under 42 U.S.C. § 1983 because it maintained a policy or custom that caused the deprivation of his constitutional rights (Count III). He also asserts two state law claims against the county, one based on respondeat superior (Count VI) and the other for negligent supervision, training, and retention (Count VII). The court analyzes Martineau's § 1983 claim before turning to his state law claims.

I.  Section 1983 Claim

In Count III of his complaint, Martineau brings a claim against Hillsborough County under 42 U.S.C. § 1983, alleging that a county policy or custom caused the deprivation of his constitutional rights.  Hillsborough County argues that Martineau has not alleged sufficient facts to state a policy or custom claim under § 1983.

Municipalities cannot be held liable under § 1983 on a theory of respondeat superior.  Monell v. Dep't of Soc. Servs., 436 U.S. 658, 691 (1978).  Rather, a plaintiff who brings a § 1983 action against a municipality must "identify a municipal 'policy' or 'custom'" that was the cause of and "'moving force' behind the injury alleged."  Haley v. City of Boston, 657 F.3d 39, 51 (1st Cir. 2011) (quoting Bd. of Comm'rs of Bryan Cty. v. Brown, 520 U.S. 397, 403-04 (1997)).  "[U]nlike a policy, which comes into existence because of the top-down affirmative decision of a policymaker, a custom develops from the bottom-up."  Baron v. Suffolk Cty. Sheriff's Dep't, 402 F.3d 225, 236 (1st Cir. 2005) (internal quotation marks omitted).  To be actionable, the custom or practice must "be so well-settled and widespread that the policy making officials of the municipality can be said to have either actual or constructive knowledge of it yet did nothing to end it."  Walden v. City of Providence,

596 F.3d 38, 57-58 (1st Cir. 2010) (internal quotation marks omitted).

Martineau's complaint is not a model of artful pleading, as Count III itself contains conclusory statements and merely recites the elements of a Monell claim.  See doc. no. 1-1 at ¶¶ 42-44.  However, Martineau alleges that one of the Officers bragged about being promoted for "beating [his] ass."  Doc. no. 1-1 at ¶ 30.  Construed generously, this allegation permits a reasonable inference that Hillsborough County decisionmakers knew about the alleged assault and ratified it by promoting one of the Officers because of it.  Cf. St. Louis v. Praprotnik, 485 U.S. 112, 127 (1988) (recognizing that where "the authorized policymakers approve a subordinate's decision and the basis for it, their ratification would be chargeable to the municipality because their decision is final").

At this early stage, the court finds that the complaint contains sufficient facts to allege a plausible Monell claim against Hillsborough County.  See Iqbal, 556 U.S. at 678 (claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged").  The court will be in a better position to address the ultimate viability of Martineau's Monell claim on a more complete record at the

summary judgment stage.[2]  Accordingly, Hillsborough County's motion for judgment on the pleadings is denied as to Count III.[3]

II. State Law Claims

Martineau asserts two state common law claims against Hillsborough County under theories of respondeat superior (Count VI) and negligent supervision, training, and retention (Count VII). Hillsborough County argues that it is entitled to municipal immunity on both claims under RSA 507-B:5.

RSA 507-B:5 provides: "No governmental unit shall be held liable in any action to recover for bodily injury, personal injury or property damage except as provided by this chapter or as is provided or may be provided by other statute." Hillsborough County is therefore immune from liability on

---

[2] The court denies Martineau's request for judicial notice of unsubstantiated allegations in several lawsuits filed against Hillsborough County in the past five years, which were all dismissed before disposition on the merits, as well as a number of news articles discussing lawsuits against Hillsborough County. The facts contained in those documents are subject to reasonable dispute and are not, therefore, appropriate matters for judicial notice. See Fed. R. Evid. 201(b); see also Greenspan v. Random House, Inc., No. 12-1594, 2012 WL 5188792, at *1 (1st Cir. Oct. 16, 2012) ("That a statement of fact appears in a daily newspaper does not of itself establish that the stated fact is 'capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned.'" (quoting Cofield v. Alabama Pub. Serv. Comm'n, 936 F.2d 512, 517 (11th Cir. 1991))).

[3] The court denies Hillsborough County's request to bifurcate discovery in this case and stay discovery on Martineau's Monell claim.

7

Martineau's state law claims unless a specific statutory exception applies. Martineau contends that his claims fall within two such exceptions. First, Martineau argues that his claims invoke RSA 507-B:2 because they arise out of Hillsborough County's operation of the Jail. Second, Martineau argues that, under RSA 507-B:7-a, Hillsborough County cannot raise an immunity defense because it insures against liability for the tortious conduct at issue in this case.

A. RSA 507-B:2

Martineau first argues that RSA 507-B:2 applies to his claims. Under RSA 507-B:2:

> A governmental unit may be held liable for damages in an action to recover for bodily injury, personal injury or property damage caused by its fault or by fault attributable to it, arising out of ownership, occupation, maintenance or operation of all motor vehicles, and all premises.

In Lamb v. Shaker Regional School District, 168 N.H. 47, 51 (2015), the New Hampshire Supreme Court ("NHSC") held that "the RSA 507-B:2 exception to municipal immunity requires a nexus between the claim and the [municipality's] ownership, occupation, or operation of its physical premises." (emphasis in original). The NHSC expressly rejected the plaintiff's argument that the phrase "operation of . . . all premises" in RSA 507-B:2 included the "operation of a business or enterprises located on those premises." Lamb, 168 N.H. at 50.

Despite the "physical premises" language in Lamb, Martineau argues that a nexus exists between his injuries, which were caused by corrections officers, and Hillsborough County's operation of the Jail. This court previously rejected a similar argument. See Maryea v. Baggs, No. 13-cv-318-LM, 2016 WL 1060226, at *5 (D.N.H. Mar. 15, 2016). In Maryea, the victim of an inmate-on-inmate assault at the Strafford County House of Corrections sued Strafford County for its failure to prevent the assault. See 2016 WL 1060226, at *4. Strafford County moved for summary judgment on Maryea's state law claims on the ground that it was entitled to immunity under RSA 507-B:5. Id. Maryea argued that her claims fell within the RSA 507-B:2 exception to immunity. Id. at *5. The court, citing Lamb, rejected Maryea's argument because her claims were not related to the physical premises of the Jail. Id. In holding that Strafford County was entitled to immunity under RSA 507-B:5, the court explained:

> Maryea provides no evidence of a nexus between her claim and Strafford County's operation of the physical [Strafford County House of Corrections] premises. To the contrary, the evidence that Maryea has submitted demonstrates that her injuries, just like those in Lamb, were caused by independent actors and unrelated to the physical premises. Thus, Maryea's claim is barred by RSA 507-B:5.

Id.

The court's reasoning in Maryea is equally applicable to the instant case. Like the assault in Maryea, Martineau's

9

injuries were caused by independent actors (here, the Officers), and he has not alleged that his injuries were in any way related to Hillsborough County's operation of the physical premises of the Jail. Martineau attempts to distinguish this case from Maryea by noting that his injuries were caused by corrections officers who worked at the Jail, not other inmates. This distinction is one without a difference. In Lamb, the NHSC made clear that RSA 507-B:2 is limited to claims that have a nexus to the county's operation of its *physical* premises. See 168 N.H. at 51. Although county employees caused Martineau's injuries in a county-operated facility, his injuries were wholly unrelated to the physical premises of the Jail. Thus, Martineau's state law claims do not fall within the RSA 507-B:2 exception to municipal immunity.

B. RSA 507-B:7-a

Martineau next contends that Hillsborough County has waived immunity as a defense under RSA 507-B:7-a. In relevant part, RSA 507-B:7-a states:

> It shall be lawful for the state or any municipal subdivision thereof, including any county, city, town, school district, school administrative unit or other district, to procure the policies of insurance described in RSA 412. In any action against the state or any municipal subdivision thereof to enforce liability on account of a risk so insured against, the insuring company or state or municipal subdivision thereof shall not be allowed to plead as a defense

>     immunity from liability for damages resulting from the
>     performance of governmental functions . . . .

(emphasis added).  See also Holm v. Town of Derry, No. 11-cv-32-JD, 2011 WL 6371792, at *2 (D.N.H. Dec. 20, 2011) ("Under RSA 507-B:7-a . . . a municipality cannot claim immunity under RSA 507-B with respect to a liability for which it has obtained insurance.").  Martineau claims that Hillsborough County cannot plead immunity as a defense because it "maintains an insurance policy through Primex."  Doc. no. 13-1 at 10.  Hillsborough County argues that Primex is a pooled risk management program ("PRMP") authorized under RSA 5-B, not an insurance policy described in RSA 412, such that RSA 507-B:7-a does not apply.

At oral argument, the court requested supplemental briefing on Hillsborough County's alleged membership in Primex.  The court ordered the parties to brief the following issues:

(1) whether membership in Primex constitutes a liability insurance policy for purposes of RSA 507-B:7-a, in light of RSA 5-B:6 and the First Circuit's opinion in Stratford School District, S.A.U. # 58 v. Employers Reinsurance Corporation, 162 F.3d 718 (1st Cir. 1998);

(2) whether discovery is needed to determine if Primex is a pooled risk management program as outlined in RSA 5-B; and

(3) if discovery is needed, whether the parties think it feasible to propose expedited discovery on that limited issue.

The parties agree that Hillsborough County is a member of Primex (i.e., the New Hampshire Public Risk Management

11

Exchange), which provides liability coverage to municipalities. See doc. no. 21 at 2. Further, the parties agree, without the need for discovery, that Primex constitutes a PRMP pursuant to RSA 5-B.[4] See id. at 1-2. However, the parties dispute whether liability coverage provided by a PRMP constitutes a liability insurance policy for purposes of RSA 507-B:7-a, such that Hillsborough County cannot claim immunity as a defense.

Under RSA 507-B:7-a, a municipality "shall not be allowed to plead as a defense immunity from liability for damages resulting from the performance of governmental functions" to the extent that the municipality has "procure[d] [a] polic[y] of insurance described in RSA 412" to insure against that risk. RSA 412 regulates certain types of insurance policies. See RSA 412:2, I. Here, Hillsborough County is a member of a PRMP organized under RSA 5-B. RSA 5-B:6, I states:

> Any pooled risk management program meeting the standards required under this chapter is not an insurance company, reciprocal insurer, or insurer under the laws of this state, and administration of any activities of the plan shall not constitute doing an insurance business for purposes of regulation or taxation.

---

[4] Martineau states that "discovery is not needed to determine if Primex is a pooled risk management program because Plaintiff concedes that Primex is a pooled risk management program." Doc. no. 21 at 1. Thus, the court does not consider the affidavit of Michael A. Ricker, General Counsel for Primex (doc. no. 22-3; doc. no. 23), which would convert the motion for judgment on the pleadings to one for summary judgment under Rule 56. See Fed. R. Civ. P. 12(d).

12

Although PRMPs may provide liability coverage that is comparable to traditional insurance, see RSA 5-B:3, the New Hampshire legislature has chosen to treat PRMPs organized under RSA 5-B differently from providers of insurance policies regulated under RSA 412.

> [T]he legislature sought to facilitate risk protection coverage for political subdivisions by granting PRMPs special status, and treating them differently from providers of traditional insurance. . . . [W]hile the [PRMP] may have some insurer-like aspects . . . the legislature has expressly removed it from the category of insurance.

Stratford Sch. Dist., 162 F.3d at 722-23. Thus, Hillsborough County's membership in Primex, a PRMP, does not constitute a policy of insurance described in RSA 412. See id. at 723 (holding that a PRMP "did not constitute 'insurance' as that term is usually understood under New Hampshire law"); see also Bowser v. Town of Epping, No. 2010-0868, at *3-4 (N.H. Sept. 16, 2011) (unreported decision without precedential value) (holding that liability coverage obtained through a PRMP is not a policy of insurance described in RSA 412 for purposes of RSA 507-B:7-a).[5]

---

[5] Pursuant to New Hampshire Supreme Court Rule 20(2):

An order disposing of any case that has been briefed but in which no opinion is issued, whether or not oral argument has been held, shall have no precedential value, but it may, nevertheless, be cited or

Although RSA 507-B:7-a states that it applies only to insurance policies described in RSA 412, Martineau argues that this section should be read to apply regardless of whether a municipality obtains an insurance policy described in RSA 412 or is a member of a PRMP pursuant to RSA 5-B.  Such an interpretation ignores the plain language of RSA 507-B:7-a, as well as the legislature's clear intent that PRMPs be treated differently than traditional insurance.  See [Stratford Sch. Dist., 162 F.3d at 722-23](). Therefore, because Hillsborough County, as a member of Primex, did not procure a liability insurance policy described in RSA 412, RSA 507-B:7-a does not apply and Hillsborough County may claim immunity as a defense.

C. Respondeat Superior Claim

With respect to Count VI, Martineau's respondeat superior claim, the court does not have sufficient information to conclude that Hillsborough County is entitled to immunity on that claim.  Count VI alleges that Hillsborough County is vicariously liable for the Officers' intentional torts, i.e. battery.  The NHSC has explained that RSA 507-B:5 provides immunity to municipalities for any intentional torts committed by municipal employees to the same extent that RSA 541-B:19

---

referenced in pleadings or rulings in any court in this state, so long as it is identified as a non-precedential order.

provides sovereign immunity to the State of New Hampshire for any intentional torts committed by State employees.  See Huckins v. McSweeney, 166 N.H. 176, 182 (2014).  RSA 541-B:19, in turn, provides the State with immunity from intentional tort claims, including battery,

> provided that the employee whose conduct gives rise to the claim reasonably believes, at the time of the acts or omissions complained of, that his conduct was lawful, and provided further that the acts complained of were within the scope of official duties of the employee for the state.

RSA 541-B:19, I(d).  Cf. Huckins, 166 N.H. at 182 ("[I]t is unconstitutional for the State to immunize itself or its municipalities from liability for intentional torts committed by government employees when those torts are not grounded on a reasonable belief in the lawfulness of the disputed act."); McCarthy v. Manchester Police Dep't, 168 N.H. 202, 208 (2015) (RSA 507-B "must be construed to permit intentional tort claims against municipal actors who do not have a reasonable belief in the lawfulness of their conduct, regardless of whether the claims have a nexus to motor vehicles or premises").  Therefore, if the Officers acted within the scope of their official duties and reasonably believed that their conduct toward Martineau was lawful, then Hillsborough County is immune from liability on Count VI under RSA 507-B:5.

15

There is nothing in this record that suggests the Officers believed their actions, as alleged in the complaint, were lawful.  On the contrary, it seems unlikely that any corrections officer would reasonably believe the alleged treatment of Martineau was lawful.  As such, Hillsborough County has not established that it is immune from liability on Count VI.

In sum, while Hillsborough County is immune from liability on Martineau's negligent supervision, training, and retention claim, it has not shown that it is entitled to municipal immunity on the respondeat superior claim.  Accordingly, Hillsborough County's motion for judgment on the pleadings is granted as to Count VII and denied as to Count VI.

## CONCLUSION

For the foregoing reasons, Hillsborough County's motion for judgment on the pleadings (doc. no. 9) is granted as to Count VII and denied as to Counts III and VI.

SO ORDERED.

_____
Landya McCafferty
United States District Judge

June 22, 2017

cc: John A. Curran, Esq.
    Stephen T. Martin, Esq.